McKEAGUE, Circuit Judge,
dissenting.
By permitting unscrupulous home-buyers to lie and deceive in order to receive mortgages they could not obtain honestly, the majority places the imprimatur of this court on conduct that is clearly fraudulent and possibly criminal. Therefore, I respectfully dissent.
By holding that the $90,000 given to Felsner by Middleton was not actually a gift — despite the unambiguous language of the gift letter to the contrary — the majority opinion undercuts the expectations of lenders who rely on these letters everyday *888 when making lending decisions. If the $90,000 was not a gift, as the letter signed by both Felsner and Middleton clearly says it was, then Felsner and Middleton knowingly submitted a false document to a lending institution for the purpose of gaining a loan in violation of both federal and state law. See 18 U.S.C. § 1344; see also Fla. Stat. § 817.03. In fact, as the district court noted, numerous individuals are serving time in federal prisons for engaging in conduct that is substantially similar to the conduct that the majority has blessed in this case. See United States v. Paul, 57 Fed.Appx. 597, 605-06 (6th Cir.2003) (per curiam) (affirming the bank fraud conviction of an individual who submitted a fraudulent gift letter to a mortgage broker for the purpose of securing a loan).
Under the majority’s reasoning, individuals interested in purchasing a home need not be concerned with the veracity of the representations or documentation that they submit to mortgage lenders. It is of no consequence that a real estate agent and a title company employee may have known of Middleton and Felsner’s scheme because neither of them represented the lender; there is no evidence that the lender itself was aware that the gift letter was a sham. As Felsner himself testified, he and Middleton did not advise the mortgage lender of their scheme because “it specifically states in the contract to the mortgage that [the property] can not be transferred to a second party or third party at all.” JA at 384. This statement demonstrates that Felsner and Middleton knew they were engaging in deceitful conduct and knew they would have been unable to obtain the property if the lender was aware of their scheme.
A. Reasonably Equivalent Value Requirement
Unlike the majority, I am unable to see how the $90,000 gift from Middleton to Felsner — which allowed Felsner to obtain the mortgage and gain title to the property in the first place — constitutes the same transaction as the later transfer of the title to Middleton via quitclaim deed. Simple logic dictates that there were two separate and distinct transactions in this case. First, Felsner received the $90,000 from Middleton and gained title to the property. Second, Felsner quitclaimed the property to Middleton and received nothing of value in return. By holding otherwise, the majority is essentially saying that in the same transaction Felsner both gained title to the property and transferred that same title to Middleton. I do not see how that is possible.
Viewing the events in this case as two transactions, leads me to the conclusion that the transfer of the property from Felsner to Middleton via the quitclaim deed was not supported by reasonably equivalent value as is required by Florida’s fraudulent transfer statute, Fla. Stat. § 726.105. At the moment Middleton received the quitclaim deed, she provided nothing of value to Felsner, or as Felsner himself put it, he received “zero” in return for deeding the property to Middleton. JA at 368. The $90,000 that Middleton previously gave to Felsner cannot serve as reasonably equivalent value for the quitclaim deed because that money was no longer in their possession; rather, it was in an account belonging to the title company. Looking to Florida’s definition of reasonably equivalent value, title to the property “went out” to Middleton via the quitclaim deed and nothing “was received” by Felsner. See generally Bakst v. O’Connor & Taylor Dev. Corp. (In re Vilsack), 356 B.R. 546, 553 (Bankr.S.D.Fla.2006). Therefore, I agree with the district court’s conclusion that the bankruptcy court erred in holding that the transfer *889 was supported by reasonably equivalent value.
B. Insolvency Requirement
With regard to the insolvency requirement found in Fla. Stat. § 726.105, the majority holds that the transfer from Fels-ner to Middleton did not render Felsner insolvent because several months after the transfer a tenant temporarily assisted Felsner with the mortgage payments. I disagree. The focal point of the insolvency requirement is on the financial result of the transfer at the time it occurred or immediately thereafter. I can find no support for the majority’s conclusion that what occurred several months after the property was deeded to Middleton has any bearing on the determination of whether Felsner was rendered insolvent at the moment of transfer or immediately thereafter. Under the majority’s reasoning, if a transfer of property resulted in an individual’s debts exceeding his assets, the transfer would not have rendered the individual insolvent for purposes of fraudulent transfer law if the individual hit the lottery several months after the transfer. That is not the law. It is also important to note that the majority’s statement that Felsner was not rendered insolvent because he “neither gained nor lost money as a result of the transaction,” lacks merit. As a result of the transfer to Middleton, Felsner retained mortgage indebtedness and lost title to a substantial asset (i.e., the property). Thus, it is incorrect to say that the transfer did not negatively impact Fels-ner’s financial condition.
For the reasons stated above, I respectfully dissent.